UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JARVIS ROBERTS, GREGORY ROBERTS,
and KENDALL MASSEY,

               Plaintiffs,

      -against-

CITY OF NEW YORK, POLICE OFFICER
GEORGE AZIZE, *Shield No. 16004*, POLICE
OFFICER THEODORE PETERS, *Shield No.
13285*, and JOHN DOE 1-4,

               Defendants.

**<u>MEMORANDUM</u>
<u>DECISION AND ORDER</u>**

16 Civ. 5409 (BMC)

**COGAN**, District Judge.

      Plaintiffs Jarvis Roberts, Gregory Roberts, and Kendall Massey filed this action under 42

U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights for false

arrest, malicious prosecution, denial of their rights to a fair trial, and failure to intervene, against

two New York Police Department ("NYPD") officers.  Specifically, plaintiffs allege that the

police officer defendants violated their constitutional rights when (i) they arrested them for gun

possession as there was no probable cause to arrest them and (ii) provided that information to the

King's County District Attorney's Office ("KCDA") for prosecution.  Plaintiffs also allege

<u>Monell</u> liability against the City of New York.  Defendants have moved for summary judgment,

arguing that they had probable cause to arrest, and that in any event, qualified immunity shields

defendants from liability.  For the following reasons, defendants' motion for summary judgment

is granted in part and denied in part.

# BACKGROUND

The following undisputed facts are from the parties' Local Rule 56.1 Statements.[1]  On the relevant evening in question, February 1, 2014, defendant Officer George Azize, defendant Officer Theodore Peters, and non-party Sergeant Thomas Turner were officers with the NYPD assigned to the Police Service Area 2 ("PSA 2") Anticrime Team.  On that evening, defendants received intelligence, possibly from a confidential informant, that plaintiff Jarvis Roberts had a firearm inside 314 Sutter Ave, Apartment 14F, Brooklyn, New York (the "apartment" or "Apt. 14F").  That same night, the PSA 2 Anticrime Team, including defendants and Sgt. Turner, went to Apt. 14F to investigate the tip regarding Jarvis Roberts's possession of a gun.

Apt. 14F is a four-bedroom apartment, and it was the home of plaintiffs' grandmother – plaintiffs Gregory and Jarvis Roberts are brothers and plaintiff Kendall Massey is their cousin – for many years until she recently moved.  Apt. 14F consists of a living room and kitchen in the front part of the apartment and four bedrooms at the rear of the apartment, with a hallway that runs past the kitchen from the entryway to the rear of the apartment.  One of the bedrooms, which contained two beds, was occupied by Furman Massey (brother to plaintiff Kendall Massey

---

[1] Plaintiffs deny several statements offered by defendants, but they often provide no citations to the record to dispute defendants' facts, which are supported by the deposition and documentary evidence.  Rather, plaintiffs often make only bare assertions to the contrary, or ask the Court to accept plaintiffs' speculation by inferring from the purported absence of certain documents.  Litigants in this District are required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support their position by citing to admissible evidence in the record.  See Local Rule 56.1(b), (d).  Plaintiffs have failed to comply with the Local Rules as they do not support several of their purported denials with any citations to admissible evidence or with citations to evidence that actually support their contentions.  See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." (citations omitted)); Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (explaining that where there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions must be disregarded).  Moreover, the Court rejects all of plaintiffs' refusals to admit or deny based on a lack of knowledge and deems those facts admitted.  See Ezagui v. City of New York, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (deeming statements in moving party's Rule 56.1 statement admitted where opposing party responded with assertions that it denied knowledge and information sufficient to form a belief as to the truth of the allegations).

and cousin to plaintiffs Gregory and Jarvis Roberts).  On the night in question, there were several – approximately eleven – individuals present in Apt. 14F, including plaintiffs Kendall Massey, Jarvis Roberts, and Gregory Roberts, and non-parties Furman Massey, Dalik Roberts, Willie "Mooka" Harrison, Lakendra Stanley, and Willie Roberts, among others.

In addition to Sgt. Turner and defendants Officers Azize and Peters, two to three other unidentified officers were also part of the PSA 2 Anticrime Team that arrived to investigate the tip at Apt. 14F.  The officers knocked on the door to Apt. 14F shortly after 10:00 pm.  Willie Roberts answered the door, and at approximately 10:12 p.m., Willie Roberts signed a written consent form to allow the officers to search the bedrooms of Apt 14F.  There is a dispute as to where everyone exactly was (*i.e.*, which precise rooms) when the officers first entered the apartment, but there is no dispute that Jarvis Roberts and Kendall Massey were in the rear of the apartment, where the bedrooms were located.

Notwithstanding this dispute as to where everyone was when the officers entered, after the police officers entered, they escorted all of the individuals present in the apartment to the living room and kitchen areas, detaining them there while the officers searched the bedrooms. The officers began asking who stayed in each room, and various individuals who lived in the apartment indicated the bedrooms in which they stayed.

While searching the bedrooms, defendant Officer Peters found a loaded gun in the bottom drawer of a dresser in one of the bedrooms.  Officer Peters could not recall whether the drawer was closed when he entered the apartment, nor could he recall whether the gun was covered or concealed within the drawer.  In any event, the officers returned to the living room and specifically asked about the bedroom where the gun was found, inquiring specifically as to whose bedroom it was.  Furman Massey stated that it was his bedroom; however, there is a

dispute as to with whom Furman Massey said he shared the room, his cousin James or his brother plaintiff Kendall Massey.  Kendall Massey later testified that he did sometimes, though infrequent, spend the night in Apt. 14F.

On the night in question, plaintiff Kendall Massey did not have any form of identification with him (and thus, nothing indicating his residence), nor did plaintiff Gregory Roberts.  Plaintiff Jarvis Robert had a New York State Driver's Permit which may have identified Apt. 14F as his residence.[2]

The officers made the decision to let several people leave the apartment, including plaintiffs' cousin Willie "Mooka" Harrison, his girlfriend Lakendra Stanley, and plaintiffs' cousin Dalik Roberts.  They also made the decision to keep certain individuals in the apartment, including plaintiffs and Furman Massey.  The officers directed plaintiffs Jarvis Roberts and Gregory Roberts to stand up so they could be arrested for possession of a firearm.  Jarvis Roberts protested that the gun recovered did not belong to him.  At that point, Furman Massey stated that the gun was his, and he confirmed that it had been in his dresser drawer.  After Furman Massey admitted the gun was his, the officers asked Furman who stayed in the room with him.  Again, there is a dispute as to whether he said his cousin James stayed in the room with him or his brother plaintiff Kendall Massey.

Defendants arrested plaintiffs and Furman Massey shortly after Furman's admission, around 10:45 p.m., for criminal possession of a weapon.  Plaintiffs and Furman Massey were then transported to the PSA 2 stationhouse and taken to Brooklyn Central Booking.  When they

---

[2] Jarvis Roberts testified that, prior to the date of the incident, he held a driver's permit listing Apt. 14F as his residence, because he had lived there for several years on multiple occasions, but he could not recall if he had changed that address as of the date of the incident.

were at the PSA 2 stationhouse, Furman Massey was separately interviewed and gave a written statement that the gun found in the apartment belonged to him.[3]

The following day February 2, 2014, the KCDA declined to prosecute plaintiff Gregory Roberts, and he was released at approximately 7:30 p.m. that day. A short time later at approximately 9:00 p.m., plaintiffs Jarvis Roberts and Kendall Massey were arraigned on charges of criminal possession of a weapon and released on their own recognizance.

Officer Azize reported to the KCDA that all three plaintiffs were together in Furman Massey's bedroom when the officers arrived. Officer Azize also reported statements that he claimed were made in the apartment at 10:45 p.m., shortly before plaintiffs and Furman Massey were arrested. Specifically, Officer Azize provided the following statements: (i) Furman Massey stated that, "It's my room and I share the room with my brother Kendall;" (ii) Jarvis Roberts stated that he stayed in the room where the gun was recovered sometimes; and (iii) Gregory Roberts stated that he was "just hanging out" in the room in which the gun was recovered.

Subsequent to arraignment, plaintiff Jarvis Roberts appeared in court twice more, with his final appearance on August 29, 2014, during which time the charges against him were dismissed. Plaintiff Kendall Massey appeared in court three more times after his arraignment, and at his last court appearance, also on August 29, 2014, the charges against him were also dismissed.

## DISCUSSION

### I. Standard of Review

"[S]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks omitted). "In determining whether there is a genuine dispute as to a material fact, [the court] must resolve all ambiguities

---

[3] Furman Massey subsequently passed away in the summer of 2016.

and draw all inferences against the moving party." <u>Id</u>. In ruling on a motion for summary judgment, a district court "may rely on any material that would be admissible at a trial." <u>Lyons v. Lancer Ins. Co.</u>, 681 F.3d 50, 57 (2d Cir. 2012) (internal quotation marks omitted); <u>see also</u> <u>Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.</u>, 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." (internal quotation marks omitted)).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." <u>Major League Baseball</u>, 542 F.3d at 310 (citations omitted). A dispute is not "genuine" if no reasonable factfinder "could return a verdict for the nonmoving party." <u>Nabisco, Inc. v. Warner-Lambert Co.</u>, 220 F.3d 43, 45 (2d Cir. 2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). This means that the nonmoving party must present more than a "scintilla of evidence," <u>Del. & Hudson Ry. Co. v. Consol. Rail Corp.</u>, 902 F.2d 174, 178 (2d Cir. 1990) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," <u>Aslanidis v. U.S. Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993) (internal quotation marks omitted). Nor can a party rely on "mere assertions that affidavits supporting the motion are not credible." <u>Gottlieb v. Cty. of Orange</u>, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

**II.     Analysis**

**A.  False Arrest**

In evaluating a § 1983 claim for false arrest, courts have generally looked to the law of

the state in which the arrest occurred.  See Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d

Cir. 2012).  "A § 1983 claim for false arrest . . . is substantially the same as a claim for false

arrest under New York law."  Id. (internal quotation marks omitted)).  "Under New York law, an

action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine

him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement[,] and (4) the confinement was not otherwise privileged.'"  Id. (quoting Broughton

v. State, 373 N.Y.S.2d 87, 373 N.Y.S.2d 87, 93 (1975)).

Probable cause "is a complete defense to an action for false arrest."  Weyant v. Okst, 101

F.3d 845, 852 (2d Cir. 1996).  "[P]robable cause to arrest exists when the officers have

knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has committed

or is committing a crime."  Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the

facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 543 U.S.

146, 152-53 (2004).  Probable cause to arrest depends on the "totality of the circumstances."

Illinois v. Gates, 462 U.S. 213, 233 (1983).

In determining whether probable cause exists, an officer need not decide between

inconsistent accounts of the events, as the arresting officer is "neither required nor allowed to sit

as prosecutor, judge or jury."  Smith v. City of New York, 388 F. Supp. 2d 179, 185 (S.D.N.Y.

2005) (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)).  "[T]he arresting officer

does not have to prove plaintiff's version wrong before arresting him."  Curley v. Vill. of Suffern,

268 F.3d 65, 70 (2d Cir. 2001). "In sum, probable cause does not demand any showing that a good-faith belief be 'correct or more likely true than false.'" Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).

Constructive possession of a weapon can support probable cause for an arrest. "Where there is evidence that an individual is in constructive possession of contraband, police officers have reasonably trustworthy information sufficient to believe the crime of possession is being committed and therefore have probable cause to arrest." Abreu v. Romero, No. 08 Civ. 10129, 2010 WL 4615879, at *6 (S.D.N.Y. Nov. 9, 2010), aff'd, 466 F. App'x 24 (2d Cir. 2012). "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object." United States v. Facen, 812 F.3d 280, 286-87 (2d Cir. 2016) (internal quotation marks omitted).

Courts in this Circuit have found that a theory of constructive possession fails where the officers had no reason to believe that (1) the defendants were aware of and complicit in the illegal activity, (2) the contraband was in plain view, (3) police officers knew that the defendants were residents of the apartment or home containing the contraband, or (4) the defendants exercised dominion and control over the area containing the contraband and were not just in proximity to the location of the contraband. See United States v. Rodriguez, 392 F.3d 539, 548-49 (2d Cir. 2004); Haskins v. City of New York, No. 15-CV-2016, 2017 WL 3669612, at *5-6 (E.D.N.Y. Aug. 24, 2017); Jenkins v. City of New York, No. 10-CV-4535, 2013 WL 870258, at *8-11 (E.D.N.Y. Mar. 6, 2013).

Relevant to us here is whether there is evidence of dominion and control and whether there is evidence that the police officers knew plaintiffs were residents of the apartment, particularly the bedroom at issue. The latter is self-explanatory, but the first, dominion and

control, requires further explanation. Possession by dominion or control requires a "show[ing] that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." People v. Manini, 79 N.Y.2d 561, 569, 584 N.Y.S.2d 282 (1992) (collecting cases). A defendant's "mere presence" in a location containing contraband is insufficient to establish constructive possession; rather, the defendant's "presence [must be] under a particular set of circumstances from which a reasonable jury could conclude that the defendant constructively possessed contraband." Facen, 812 F.3d at 287.

Here, the officers had sufficient probable cause, under a theory of constructive possession, to arrest all three plaintiffs.

### 1. *Jarvis Roberts*

Defendants had probable cause to arrest plaintiff Jarvis Roberts because they had reason to believe, based on the totality of the circumstances, that he had constructive possession of the firearm recovered at the apartment. Defendants went to Apt. 14F specifically on the evening of February 1, 2014, because they received an intelligence tip that stated that Jarvis Roberts had a firearm in Apt. 14F. When they arrived at the apartment, the officers, including defendants, found Jarvis Roberts, and then in fact did recover a firearm from one of the bedrooms at the apartment. Notwithstanding the fact that Jarvis Roberts disputes which room of the apartment he was in at the time the officers arrived and even construing the facts favorably to plaintiffs that he was not in the particular bedroom wherein the gun was found (Jarvis Roberts was still in the rear of the apartment, near that bedroom), defendants' discovery of both the firearm and Jarvis Roberts at the apartment both confirmed the intelligence they received. All of this, viewed together, gave the officers probable cause to arrest. See Oliveira v. Mayer, 23 F.3d 642, 647 (2d

Cir. 1994) ("Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated.").

More than that, Jarvis Roberts's presence at the apartment and that his only piece of identification may have identified Apt. 14F as his residence (which is to say, at some point shortly before the incident, Jarvis Roberts lived in Apt. 14F), when taken together, provided defendants an additional, reasonable basis to believe that plaintiff Jarvis Roberts resided at the apartment. In fact, the arrest report for Jarvis Roberts lists his address as Apt. 14F, and defendants confirmed during their deposition that they would have recorded his address from the identification he produced, *i.e.*, his driver's permit. Accordingly, plaintiff Jarvis Roberts' claim for false arrest is dismissed because there was probable cause for his arrest.

### 2. *Gregory Roberts & Kendall Massey*

Plaintiffs Gregory Roberts's and Kendall Massey's claims fare no better. Neither plaintiff had identification on them at the time of their arrest. As to plaintiff Gregory Roberts, he contends that he was asleep in the living room at the time the police entered the apartment. If true, this supports defendants' belief that Gregory Roberts lived at the apartment, which would support a finding of probable cause for his arrest if the officers believed he had constructive possession of the gun. As to Kendall Massey, the defendants understood him to share a room with his brother Furman Massey, the same bedroom wherein the gun was found. Plaintiffs contend that Furman Massey never said that, but plaintiffs also assert that they were not in the bedroom when Officer Azize went to Furman Massey's bedroom to clear it of its occupants, which is to say, their assertion that Furman Massey never said that is speculation.

But even if I accepted plaintiffs' assertion that Furman Massey never said that (again, a bald conjecture), an officer's mistaken belief about a circumstance can still support a probable

cause determination.  See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (finding that even where the information on which a police officer relies later turns out to be mistaken, probable cause still exists as long as the arresting officer acted reasonably in relying on that information).  Accordingly, plaintiffs Kendall Massey's and Gregory Roberts's claims for false arrest are dismissed.

*     *     *

As a separate argument, and in fact, their key argument, all three plaintiffs allege that, when Furman Massey admitted to defendants, prior to plaintiffs' arrests, that the gun belonged to Furman, his confession negated the probable cause to arrest plaintiffs.  This argument is flawed for two reasons.  First, constructive possession is not a single-possessor theory, and multiple individuals may have constructive possession of contraband.  Second, and more importantly, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).  This is true even where an "innocent explanation may be consistent with the facts alleged."  Id. (internal quotation marks omitted).  This principle is also why courts hold that "[o]nce a police officer has a reasonable basis to believe there is probable cause to arrest, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest."  Id. at 396 (quoting Curley, 268 F.3d at 70).

Simply because Furman Massey admitted to possessing the gun does not mean that the officers had to believe plaintiffs, especially where their instinct and experience told them otherwise.  Sgt. Turner testified that, while he did recall Furman Massey claiming the gun belonged to him at the apartment, he did not believe his admission, stating, "I felt as if he was being forced or intimidated into saying that, and that is why we decided to take all four."

Plaintiff Kendall Massey's testimony appears to support this, as he testified during his deposition that Furman Massey only claimed the gun was his after plaintiff Jarvis Roberts, who the tip had indicated was the owner of the gun, began arguing with the police and denying ownership.

Although plaintiffs offer many cases establishing a high proof requirement for constructive passion, the fundamental failings of their *criminal* case citations is that they are totally inapposite to the question before me: The question here is whether the officers had probable cause to believe there was constructive possession, not whether plaintiffs were guilty beyond a reasonable doubt of weapons possession. Plaintiffs cite criminal case after criminal case that discusses what is necessary to establish guilt via constructive possession, but the officers were not sitting as jurors or judge; they were making informed decisions based on the totality of the circumstances. It is further worth noting that there were a total of at least eleven adults in the apartment, three of whom the officers allowed to leave as soon as the gun was recovered, and the majority of whom were ultimately not arrested, despite their presence at the apartment. It is thus clear that, even if defendants were mistaken in the end, the officers attempted to marshal the information available to them to determine who could reasonably have had constructive possession of the weapon.

For the reasons stated above, all of plaintiffs' claims for false arrest fail, and as will be discussed later, in any event, qualified immunity shields the police officers from liability for false arrest.

### 3. *Qualified Immunity*

Notwithstanding my earlier determination that probable cause barred plaintiffs' claims on false arrest, there is a second reason that defendants are not liable on the false arrest claim: qualified immunity. Qualified immunity inoculates government officials from civil liability

where (i) those officials were performing discretionary functions and (ii) "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The doctrine is broad in scope, and as the Supreme Court has repeated on several occasions, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

As the Supreme Court has recently held, government officials are entitled to qualified immunity when the "official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  White v. Pauly, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).  In practice, this means that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Coollick v. Hughes, 699 F.3d 211, 221 (2d Cir. 2012) (internal quotation marks omitted).  The application of qualified immunity is important because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials − like other officials who act in ways they reasonably believe to be lawful − should not be held personally liable."  Anderson, 483 U.S. at 641.

The qualified immunity standard is often referred to as "arguable probable cause" and is defined by the Second Circuit as existing when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law."  Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and emphasis omitted). Further, "an arresting officer is entitled to qualified immunity "as a matter of law if the

undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." McClellan v. Smith, 439 F.3d 137, 147-48 (2d Cir. 2006) (internal quotation marks and emphasis omitted); see also Ricciuti, 124 F.3d at 128 ("A police officer is entitled to qualified immunity shielding him or her from damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.").

"Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of the arrest, that probable cause existed." Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016) (internal quotation marks omitted). Here, applying these legal principles, I find that it was objectively reasonable for the officers to believe there was probable cause to arrest and prosecute plaintiffs.

First, the constructive-possession law at the time of plaintiffs' arrests was not clearly established, such that the officers could not have known the precise contours and outer bounds of what constituted probable cause to arrest plaintiffs under a theory of constructive possession in the circumstances presented in this action. This lack of clarity in the law regarding constructive possession made it reasonable for defendants to believe they had probable cause. In White v. Pauly, the Supreme Court emphatically reminded lower courts that it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. at 552 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). In all cases, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S.

Ct. 305, 308 (2015) (internal quotation marks omitted). In other words, "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." <u>Reichle v. Howards</u>, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks omitted).

The standard for determining constructive possession is fact-specific, and as the Second Circuit has stated, "it is not necessary for a defendant to touch or exercise exclusive control over contraband to possess it," because "[w]hat is required is sufficient indicia of dominion and control." <u>United States v. Rios</u>, 856 F.2d 493, 496 (2d Cir. 1988) (citations omitted). This standard requires police officers to consider several factors and make a judgment call, and courts that have reviewed those judgment calls have come out in divergent ways. The very fact that courts disagree regarding what specific factual circumstances would be sufficient to find constructive possession demonstrates that the law is not well-settled. Defendants made a discretionary determination in a "gray area," and that kind of determination is protected by qualified immunity.

Second, defendants are entitled to qualified immunity because the facts of this case gave them, at a minimum, "arguable probable cause" to arrest plaintiffs. After locating the firearm that their intelligence indicated was at the apartment, defendants made a reasoned calculation as to who was responsible for the gun. Although defendants contend that all three plaintiffs and Furman Massey were in the bedroom where the firearm was recovered when they arrived at the apartment, this fact is not essential to a determination of whether there was probable cause or arguable probable cause for the arrests. I accept the facts in the light most favorable to the plaintiffs on who was in the bedroom when the officers entered, but even with that acceptance, defendants had reason to believe that plaintiffs resided in the apartment, as I held above. It is

again worth noting that there were at least eleven adults in the apartment, three of whom the officers allowed to leave as soon as the gun was recovered, and the majority of whom were not ultimately arrested, despite also being present in the apartment when the gun was found.  Even if defendants were mistaken in the end, the officers attempted to gather all of the information available to them to decide whether there was probable cause to arrest for constructive possession of the weapon and whom they should arrest.  Therefore, because there was at least "arguable probable cause," in fact more than arguable, to arrest and prosecute plaintiffs, defendants are entitled to qualified immunity.

**B.  Malicious Prosecution**

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  In addition to these state law elements, a malicious prosecution claim brought under § 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  "[T]he law places a heavy burden on malicious prosecution plaintiffs."  Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (internal quotation marks and citation omitted).  The third element is the most important here "[b]ecause lack of probable cause is an element of a malicious prosecution claim," and "the existence of probable cause is a complete defense to a claim of malicious prosecution."  Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013).

In the first instance, I note that plaintiff Gregory Roberts cannot pursue a claim for either malicious prosecution because the KCDA declined to prosecute him.  Plaintiff realizes this fact

only now and agreed to withdraw his claim as part of the opposition to defendants' motion for summary judgment. Only Jarvis Roberts and Kendall Massey were charged, and the following analysis relates to only them. I additionally note that Jarvis Roberts and Kendall Massey have also withdrawn their malicious prosecution claim against all defendants except Officer Azize, so the below analysis is further limited to him alone.

The problem with Jarvis Roberts's and Kendall Massey's claims are that the same probable cause that existed when they were arrested remained in existence when the KCDA decided to charge them. "Where there is no change in the information known to police at the time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for malicious prosecution." Cortes v. City of New York, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (noting that plaintiff pointed to no change in the information available to the defendants after the time he was arrested and, therefore, "[s]ince probable cause existed for the arrest and it did not dissipate, that same probable cause requires dismissal of plaintiff's malicious prosecution claim"); Berry v. Marchinkowski, 137 F. Supp. 3d 495, 537 (S.D.N.Y. 2015) (holding that if probable cause existed at the time of arrest, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact"). There is no evidence to suggest that the probable cause dissipated in any way in the less than 24-hour period between plaintiffs' arrests and arraignments.

Plaintiffs again point to Furman Massey's confession as having vitiated probable cause for their prosecution, but his confession that the gun belonged to him would not preclude a theory of constructive possession over the gun for the same reasons discussed above. Moreover, that the KCDA exercised its discretion in declining to charge Gregory Roberts and moving forward as to Kendall Massey and Jarvis Roberts shows that the prosecutors looked at the case

with a different perspective than the police officers. Which is to say, the prosecutors did not

simply accept the arrests as supported by probable cause at face value; they reviewed the

evidence and determined there was insufficient evidence to proceed as to Gregory, but sufficient

evidence as to Jarvis and Kendall. See Hartman v. Moore, 547 U.S. 250, 263 (2006) (Where an

allegation of misconduct is directed at the police, "a malicious-prosecution claim cannot stand if

the decision made by the prosecutor to bring criminal charges was independent of any pressure

exerted by [the] police."). Thus, defendants' motion for summary judgment as to the malicious

prosecution claim is also granted.

## C. Fair Trial

At the outset, I note that, just as he did for the malicious prosecution claim, plaintiff

Gregory Roberts has withdrawn his claim regarding the denial of his right to a fair trial based on

his lack of prosecution. Additionally, plaintiffs Jarvis Roberts and Kendall Massey have

withdrawn their fair trial claims against all defendants except Officer Azize. Thus, the following

analysis is tailored in scope in the same manner as the malicious prosecution analysis.

Plaintiffs Jarvis Roberts and Kendall Massey argue that their rights to a fair trial were

denied because Officer Azize provided three purportedly fabricated statements to the KCDA,

specifically that (i) Gregory Roberts stated that he was "just hanging out" in the room in which

the gun was recovered; (ii) Jarvis Roberts stated that he stayed in the room where the gun was

recovered sometimes; and (iii) Furman Massey stated that, "It's my room and I share the room

with my brother Kendall." I find that there are material disputes of facts with respect to the fair

trial claim such that defendants' motion for summary judgment on this issue must be denied.

A plaintiff establishes a constitutional violation for the denial of his right to a fair trial

based on the fabrication of evidence if he proves that "an (1) investigating official (2) fabricates

evidence (3) that is likely to influence a jury's decision, (4) forwards that information to

prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012); see also Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."). Therefore, to have a cognizable claim for the denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and his deprivation of liberty. See Zahrey v. Coffey, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," and the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the *result of* [the defendant's] fabrication of evidence." (internal quotation marks omitted)).

Importantly, and unlike the law with respect to malicious prosecution claims, the Second Circuit has held that the existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim. See Ricciuti, 124 F.3d at 130. However, at the same time, the Second Circuit has also held that a plaintiff must show causation between the alleged fabricated evidence and a plaintiff's deprivation of liberty. See Zahrey, 221 F.3d at 355. The problem is I cannot determine one way or another whether the elements have been, or have not been, met given the factual issues in the record regarding the purportedly fabricated statements.

As to the first statement, that Gregory Roberts stated that he was "just hanging out" in the room where the gun was recovered, whether or not this statement was fabricated is entirely immaterial because Gregory Roberts was not charged and he has withdrawn his fair trial claim.

As to the second statement and third statements, however, that Jarvis Roberts stated that he stayed in the room where the gun was recovered sometimes and that Furman Massey stated that he shared that bedroom with his brother, I cannot determine on summary judgment whether these facts were fabricated, and if so, what effect they had on the course of the prosecution going forward, including, in particular plaintiffs' post-arraignment liberty deprivations, *i.e.*, their subsequent court appearances.  The issue is that these statements by Jarvis Roberts and Furman Massey, according to Officer Azize, were made in Furman Massey's bedroom, with the other plaintiffs present.  But plaintiffs deny that they were in Furman Massey's bedroom at the time that the officers entered the room, and they further deny that those statements were made at all at any point in the night.

I recognize that there is an inherent inconsistency in plaintiffs' theory of the events – if plaintiffs were not in Furman Massey's bedroom when Officer Azize came to collect him and move him to the front of the apartment, then Furman Massey and Officer Azize were alone for some portion of time, during which time any number of statements, including the purportedly fabricated statement, could have been made.  Plaintiffs would have no basis to deny that Furman Massey made statements outside of their presence, but I cannot infer that these statements happened when I accept plaintiffs' premise that they were not present.

However, I can neither accept defendants' premise that plaintiffs were present.  There is no evidence to support that conclusion.  Officer Azize did not recall conversations and so testified during his deposition, and at no point did he testify that he was alone with Furman Massey, let alone that Furman Massey made the statement which plaintiffs claim was fabricated. To accept defendants' argument would require me to draw inferences in their favor: (1) that, despite his lack of recollection, Officer Azize was alone with Furman Massey for some portion

of time; and (2) it was during that presumed "alone time" that Furman Massey made the statement that defendants attribute to him. The context of summary judgment does not allow me to draw inferences in defendants' favor. If Officer Azize cannot give evidence to support his lawyers' story, they are going to have to ask a jury to draw those inferences, not me.

Both plaintiffs' and defendants' posited scenarios ask me to weigh the evidence in a way that is inappropriate on a summary judgment motion. Accordingly, defendants' motion for summary judgment on the fair trial claims is denied, and the claims may move forward as to Kendall Massey and Jarvis Roberts.[4]

### D. Failure to Intervene

Plaintiffs' failure to intervene claim fails as a matter of law. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). However, the two officers sued in the complaint are primary actors, neither of whom could have intervened as to themselves. See Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013). Plaintiffs recognize as much, agreeing that Officers Azize and Peters were personally involved in this incident. Notwithstanding, they ask this Court to stay consideration of the claim on the contingency that defendants "later claim[] lack of personal involvement." This request does not make any sense. All parties agree that Officer Azize and Officer Peters were personally involved. There is no moving backwards from that at trial, and the request to stay is denied. Defendants' motion is granted as to this claim.

---

[4] It may appear that, on first blush, the holding as to the fair trial claim is in tension with the holding on the false arrest and malicious prosecution claims, but they are not. Based on what transpired, including a confluence of several particular facts and the totality of the circumstances, probable cause existed to arrest the three plaintiffs and charge two of them. However, the question of whether to maintain the prosecutions on the basis of Officer Azize's statements, or how they factored into the decision to maintain the prosecutions, are questions that fall outside the ambit of probable cause, which, again, does even act as a bar to a fair trial claim anyway.

**CONCLUSION**

Defendants' motion for summary judgment is granted in part and denied in part.[5]

**SO ORDERED.**

_____
                                                U.S.D.J.

Dated: Brooklyn, New York
       September 29, 2017

---

[5] I had previously severed the <u>Monell</u> claim, and the claim will remain severed until the resolution of the sole remaining individual claim.